## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **OSCAR OSMIN CHAVEZ DERAS,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | |
|  | ) | **C.A. No.** |
| **CHAD WOLF, Acting Secretary, U.S. Department of** | ) | |
| **Homeland Security; U.S.  DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY; U.S.  CITIZENSHIP AND IMMIGRATION** | ) | |
| **SERVICES, and MICHAEL J. MCCLEARY, Field Office** | ) | |
| **Director, USCIS Boston Field Office.** | ) | |
| **Defendants.** | ) | |

_____)

## PLANTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

This action is brought by the Plaintiff, **Oscar Osmin Chavez Deras,** against the

Defendants to seek review of a September 23, 2020 decision of the U.S. Citizenship and

Immigration Services improperly denying the Plaintiff's application to adjust status. The Plaintiff

seeks a declaratory judgment declaring: the decision of the Defendants dated September 23, 2020

to deny the Plaintiff's application to adjust status unlawful; reversing the September 23, 2020

decision to deny the Plaintiff's application; ordering the Defendants to reopen the Plaintiff's

application to adjust status and accept jurisdiction over the application; ordering the Defendants

to adjudicate and approve the Plaintiff's application to adjust status immediately; and granting

the Plaintiff lawful permanent residence and striking the Defendants September 23, 2020

decision as unlawful and in violation of the Immigration and Nationality Act and associated

regulations and the Administrative Procedure Act. The Plaintiff also seeks injunctive relief

against the Defendants to prevent them from taking further action on the Plaintiff's case other

than issuing the corrected decision requested herein. The Plaintiff seeks action on this petition on an emergency basis due to circumstances set forth in this complaint.

## PARTIES

1.      The Plaintiff, **Oscar Osmin Chavez Deras**, is a native and citizen of El Salvador. The Plaintiff resides in Nantucket, Massachusetts.

2.      The Defendant, **Chad Wolf**, is being sued in his official capacity as the Acting Secretary of the Department of Homeland Security.  In this capacity, he is charged with the administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103, and he possesses extensive discretionary powers to grant certain relief to non-U.S. Citizens. More specifically, the Secretary of the Department of Homeland Security is responsible for the adjudication of visa petitions, applications to adjust status, and various other immigration applications pursuant to §§ 204, 245, et. seq. of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154, 8 U.S.C. §1255, et. seq.  The U.S. Citizenship and Immigration Services is an agency within the Department of Homeland Security to whom the Secretary's authority has in part been delegated, and is subject to the Secretary's supervision.

3.      The Defendants, **Department of Homeland Security (hereinafter "DHS") and the U.S. Citizenship and Immigration Services (hereinafter "USCIS")** are the agencies responsible for enforcing the INA and for adjudicating and properly acting on the Plaintiff's application to adjust status.

4.      The Defendant, **U.S. Citizenship and Immigration Servic**es, includes the **Boston Field Office.** The Defendant, **Michael McCleary**, is the Director of the Boston Field Office which is the place where the Plaintiff was interviewed in connection with his application to adjust status

and is the office that erroneously denied the Plaintiff's application. The Boston Field Office is

located at the JFK Building, 15 New Sudbury Street, Boston, MA 02203.

## JURISDICTION

5.      Jurisdiction in this case is proper under the Immigration and Nationality Act (INA), 8

U.S.C. § 1101 *et seq*.; 28 U.S.C. §§ 1331 and 1361; the Administrative Procedures Act (APA), 5

U.S.C. § 701 *et seq*.; and 28 U.S.C. § 2201 *et seq*.  Relief is requested pursuant to said statutes.

There is an actual and justiciable controversy between the parties and the Plaintiff seeks

declaratory and injunctive relief in this action.

## VENUE

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(e), in that this is an action

against officers and agencies of the United States in their official capacities, brought in the

District where the Defendants conduct business and where a substantial part of the events or

omissions giving rise to the Plaintiff's claims occurred.  More specifically, the Plaintiff resides in

Massachusetts, the Plaintiff was interviewed at the USCIS Boston Field Office, and the

Plaintiff's application to adjust status that is in dispute was improperly denied by the USCIS

Boston Field Office which has jurisdiction over applications to adjust status filed by

Massachusetts residents who live in the Boston, MA area.

## EXHAUSTION OF REMEDIES

7.      The September 23, 2020 decision by the Defendant USCIS to deny the Plaintiff's

application to adjust status constitutes a final agency action under the APA, 5 U.S.C. § 701 *et*

*seq*. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a) require an administrative appeal

of the denial. Accordingly, the Plaintiff has no administrative remedies to exhaust. Moreover,

exhaustion of any available administrative remedies will be meaningless and ineffective given

the issues in this case and this lawsuit is the Plaintiff's only legal means to rectify the situation. The Plaintiff has no other viable remedy or legal avenue to pursue in connection with this issue other than this action.

## FACTUAL AND LEGAL ALLEGATIONS

**The Plaintiff's Immigration History.**

8.     The Plaintiff first entered the United States on August 15, 1993 without inspection. In August 5, 1994, the Plaintiff filed an application for political asylum with the then Immigration and Naturalization Service (INS). In May, 1999, the USCIS referred the Plaintiff to the Boston Immigration Court for removal proceedings by issuance of a Notice to Appear (NTA).

9.     By order dated December 15, 1999, the Immigration Judge in Boston, MA ordered the Plaintiff removed in absentia for his failure to appear at his hearing. In February, 2000, through counsel, the Plaintiff filed a motion to reopen his removal proceedings, which the Immigration Judge denied by order dated February 22, 2000. The Plaintiff is subject to a final order of removal and his removal proceedings cannot be reopened.

10.     The Plaintiff continued to reside in the United States subsequent to when he was ordered removed. In March, 2001 President George W. Bush's administration designated El Salvador for temporary protected status (TPS) due to the devastating earthquake that caused considerable damage to the country. The Plaintiff applied for TPS pursuant to the requirements of the program and his application was granted. In addition to obtaining TPS, the Plaintiff was granted employment authorization which permitted him to live and work in the United States legally. From 2001 until 2018, the TPS program for citizens of El Salvador was renewed and the Plaintiff renewed his TPS and his employment authorization as required by the program. He is currently in valid TPS status through January 4, 2021.

11.     Effective September 9, 2019, the Trump Administration, purposely and with the intent to harm and deport citizens of El Salvador from the United States, terminated TPS for citizens of that country. By virtue of a preliminary injunction in the case, *Ramos, et al. v. Nielson, et al.*, No. 18-cv-01554 (N.D. Cal. October 3, 2018), the Trump administration was prevented from enforcing its termination of TPS for citizens of El Salvador and several other countries. Solely as a result of the injunction in *Ramos*, TPS for citizens of El Salvador has been extended through January 4, 2021. However, the future of TPS for citizens of El Salvador, and citizens of many other countries, remains entirely uncertain. In fact, given the Trump administration's propensity for curtailing immigration and terminating immigration related programs initiated under previous administrations, the Plaintiff anticipates that his TPS status will terminate thereby leaving him subject to removal proceedings where he is not eligible to apply for adjustment of status.

**The Plaintiff's personal history and application to adjust status.**

12.     The Plaintiff was born in 1970 in El Salvador. The Plaintiff has two U.S. Citizen children who are 25 and 18 years old.

13.     As an individual with TPS the Plaintiff is eligible to apply for permission to depart and re-enter the United States, through a process commonly called "advance parole." Upon approval of an application for advance parole, the applicant receives an advance parole document that permits him/her to travel outside the United States and re-enter the country legally. Upon entry to the United States after foreign travel, the TPS holder is "paroled" into the United States by virtue of the advance parole document issued by the USCIS. However, TPS holders cannot travel outside the United States and legally re-enter the country without an approved advance parole document. That is to say that even though a person may be in valid TPS status, that status in and of itself does not permit the individual to leave the United States and legally re-enter the country.

It is only by virtue of the advance parole document that a person with TPS will be permitted to legally re-enter the United States after foreign travel. Upon entry to this country with advance parole the TPS holder is issued Form I-94 by U.S. Customs and Border Protection (CBP) which is stamped "Paroled." The authority to parole non-citizens into the United States and the meaning of the term "parole" are defined by statute.

> "The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

*INA § 212(d)(5)(A).*

14.     Between 2002 and 2018 the Plaintiff applied for and was granted advance parole on four occasions so that he could travel outside the United States and legally re-enter the country. Upon approval of each application for advance parole, the USCIS issued a document entitled, "I-512L, Authorization for Parole of an Alien Into the United States." In early, 2019 the Plaintiff traveled outside the United States with his advance parole document. On March 24, 2019 the Plaintiff was paroled into the country after returning from his trip. Upon his entry to the United States in Boston, MA a CBP Officer stamped the Plaintiff's Form I-512L and paroled the Plaintiff into this country for a period of one year. (Copies of the Plaintiff's most recent Form I-512L and pages from his Passport are attached hereto as Exhibit A). The Plaintiff has continued to reside in this country in valid TPS status subsequent to his last entry as a parolee in 2019.

15.     In October, 2019, the Plaintiff's U.S. Citizen son filed a visa petition for him on Form I-130 and he concurrently filed Form I-485, Application to Adjust Status. On September 23, 2020 the Plaintiff and his son attended an interview at the Defendant USCIS Boston Field Office in connection with the visa petition and the application to adjust status. At the time the Plaintiff filed his application to adjust status and for many years prior to then, the USCIS routinely approved cases similar to the Plaintiff's based on the fact that as a parolee he is an "arriving alien" and the USCIS has jurisdiction over applications to adjust status filed by "arriving aliens." In fact, prior to August, 2020, the USCIS routinely approved applications to adjust status for similarly situated TPS holders and the agency has acknowledged that such individuals reasonably relied on the then USCIS policy. *See Matter of Z-R-Z-C-*, Adopted Decision 2020-02 (AAO Aug. 20, 2020) now included in *USCIS Policy Memo 602-0179 dated August 20, 2020* https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-2 *("applicants who have previously received consent to travel and have traveled with DHS consent pursuant to INA 244(f)(3) are likely to have relied upon the past practices and guidance. Accordingly, the statutory construction announced by Matter of Z-R-Z-C- only applies to TPS recipients who departed and returned to the United States under INA 244(f)(3) after the date of the AAO's Adopted Decision, August 20, 2020.").* However, rather than act in accordance with its stated policy, the USCIS acted in direct contradiction by denying the Plaintiff's application.

16.     By decision dated September 23, 2020, after acknowledging that its own policy was to approve applications like the Plaintiff's prior to August, 2020, the USCIS denied the Plaintiff's application to adjust status based on the determination that it does not have jurisdiction to adjudicate the application, erroneously concluding that the Plaintiff is not an "arriving alien" despite being paroled into the United States. (A copy of the Notice of Decision is attached hereto

as Exhibit B). The USCIS decision was made despite its stated policy that applications filed prior to August, 2020 were routinely approved. This action by the USICS was done with the deliberate intent to damage the Plaintiff and his family both emotionally and financially. Moreover, this decision is a final decision on the Plaintiff's application and has the same effect as a denial of the application.

**The Immigration and Nationality Act and Arriving Aliens.**

17.     Pursuant to INA § 245(a) non-citizens who were "inspected and admitted or paroled" into the United States and for whom an immigrant visa is immediately available at the time an application to adjust status is filed may apply for residence in the United States. Applications to adjust status filed pursuant to INA § 245(a) are filed with and adjudicated by the USCIS. *8 CFR § 245.2(a)*. When a non-citizen, who is not defined by law as an "arriving alien," is referred to the Immigration Court for removal proceedings, jurisdiction over an application to adjust status vests with the Immigration Court. *8 CFR § 1245.2(a)(1)*. However, subject to one very specific and limited exception not applicable to this case, the USCIS has exclusive jurisdiction over applications to adjust status filed by "arriving aliens." *8 CFR § 1245.2(a)(2)*. The "arriving alien" regulation was created by the USCIS and the Executive Office for Immigration Review (EOIR) after the agencies decided numerous cases where parolees in removal proceedings were being prevented from adjusting their status based on a false interpretation of the INA by the government.  *See Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98 (3rd Cir. 2005); *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005); *71 Fed. Reg. No. 92*, 27587 (May 12, 2006). In creating the current regulation, the agencies recognized that "arriving aliens" are entitled to seek adjustment of status under INA § 245(a) and that the USCIS would have

exclusive jurisdiction over the initial application if properly filed by an eligible applicant. *See 71 Fed. Reg. No. 92*, pp. 27585-27592 (May 12, 2006.).

18.     An "arriving alien" is defined as:

> An applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designed port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after such parole is terminated or revoked.

8 C.F.R. §§ 1.2 and 1001.1(q). Parolees by definition are "arriving aliens" because at a port-of-entry they are permitted to physically enter the United States, but they are not "admitted." "[S]uch parole of such alien shall not be regarded as an admission of the alien." *INA § 212(d)(5)(A).* Moreover, BIA case law clearly states that parolees are "arriving aliens." *See In Re Oseiwusu*, 22 I&N Dec. 19, 19-20 (BIA 1998) ("The respondent was paroled into the United States upon his arrival pursuant to a grant of advance parole…[G]iven the fact that the Respondent was paroled into the United States, he falls within the definition of an 'arriving alien.'").

19.     That the Plaintiff was paroled into the United States upon his last entry on March 24, 2019 is irrefutable. Furthermore, the USCIS policy for applications filed prior to August, 2020 was to approve such applications based on the fact that the Plaintiff and other TPS holders who traveled with advance parole specifically meet the "inspection and admitted or paroled" requirement under INA § 245(a) to be eligible for adjustment of status. Nevertheless, in its decision to deny the Plaintiff's application to adjust status, the USCIS states, "an applicant who travels abroad with TPS travel authorization returns to the United States in same immigration status he or she had at the time of departure… Therefore, upon your return to the United States

on March 24, 2019, you remained in removal proceedings with an unexecuted final order of removal." After completely misconstruing both the facts and the law, the USCIS decision goes on to say, "Since you entered without inspection and were not an arriving alien before your departure from the United States, you are not an arriving alien now. Therefore, you remain subject to an unexecuted final order of removal and USCIS lacks jurisdiction over your application. For these reasons, your Form I-485 is denied." *See Exhibit B.*

20.     The USCIS decision that it lacks jurisdiction over the Plaintiff's application to adjust status is a complete fallacy and was made with complete disregard to the law and the basic facts of the Plaintiff's case. The USCIS's attempt to re-define the definition of an "arriving alien" completely disregards the plain language of the statute and ignores the basic facts of this case. As a person who was paroled into the United States on his last entry, the Plaintiff is an "arriving alien" and the USCIS has exclusive jurisdiction over his application to adjust status. The decision of the USCIS to deny the Plaintiff's application to adjust status based on lack of jurisdiction is arbitrary, capricious and an abuse of discretion.

21.     The USCIS decision to deny the Plaintiff's application to adjust status in complete disregard for its then policy was done with the specific intent to damage the Plaintiff and his family both emotionally and financially. The USCIS decision is without legal authority and is a complete departure from practice before the agency which has existed for many years. The issue of whether a parolee is an "arriving alien" has never been disputed by the USCIS until recently. This abrupt, unannounced change in USCIS policy is based on legally inaccurate reasoning in complete disregard for the plain language of the statute, and is arbitrary and capricious. Moreover, the legally flawed change in USCIS policy is yet another policy change by the Trump

Administration made without legal authority and with the specific intent to damage immigrants and eviscerate the current immigration system in this country without an act of Congress.

22.     As a direct result of the decision by the Defendant, USCIS, to deny the Plaintiff's application to adjust status for lack of jurisdiction, the Plaintiff has been financially and emotionally damaged. Because he is an "arriving alien" and does not fall within the specific exception to EOIR jurisdiction over adjustment applications filed by "arriving aliens" in 8 CFR § 1245.2(a)(2), the Plaintiff cannot adjust his status before the U.S. Immigration Court. The Plaintiff cannot reopen his removal proceedings because he is time barred and numerically barred from filing an additional motion to reopen. *See 8 U.S.C §1229a(c)(7)(A); INA §240(c)(7)(A); 8 CFR §§ 1003.2(c)(2), 1003.23(b)(1).* Therefore, the decision by the USCIS has left the Plaintiff without any possible way to adjust his status which has caused the Plaintiff and his family irreparable harm.

## **COUNT ONE**

**Violation of the Administrative Procedure Act 5 U.S.C. § 701, et seq.**

23.     The Plaintiff repeats and re-alleges the allegations in paragraphs 1-22 above and incorporates them herein by reference.

24.     The Defendants improper denial of the Plaintiff's application to adjust status is an agency action and is reviewable under the Administrative Procedure Act.

25.     A reviewing court shall "hold unlawful and set aside agency action . . . found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Defendant, USCIS erroneously denied the Plaintiff's application to adjust status based on a legally inaccurate determination that he is not an "arriving alien" and that it does not have jurisdiction over his application to adjust status.

26.     The Defendant, USCIS failed to properly consider and interpret all evidence, misread the INA and the associated regulations and created an interpretation of the law entirely inconsistent with applicable statutes, regulations, case law, and previous agency interpretation of the relevant statutes and regulations.  Moreover, the decision by the USCIS breaks with policy and procedure followed by the USCIS subsequent to May, 2006, when 8 CFR § 1245.2 was enacted. In so doing, the Defendant violated its own policy and its statutory duty to properly adjudicate the Plaintiff's application to adjust status.

27.     The Defendant, USCIS's, decision to deny the Plaintiff's application to adjust status is arbitrary and capricious.  Under 5 U.S.C. §§ 702 and 704, the Plaintiff has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

28.     The damage to the Plaintiff is irreparable. This lawsuit presents the only viable solution to the Plaintiff's problem.  The Plaintiff seeks preliminary injunctive relief to prevent further action by the Defendants on this case until such time as the court can rule on the merits of the Plaintiff's claim.

29.     As a direct result of the Defendant's, USCIS, decision the Plaintiff and his family have suffered severe emotional and financial harm. To the extent relief as requested in this Complaint is not granted the harm to the Plaintiff is irreparable. The Plaintiff is entitled to a declaratory judgment ordering the Defendant, USCIS, to accept jurisdiction over his application to adjust status, reopen the case, and to adjudicate the application. The Plaintiff requires this approval immediately to ensure that he remains in the United States with his family.

30.     The Defendants, in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et seq., have unlawfully and unreasonably denied the Plaintiff's application to adjust status, leaving

him no recourse to obtain residence. The Defendants have failed to properly carry out the adjudicative functions delegated to them by law with regard to the Plaintiff's case. The Plaintiff is entitled to have the USCIS adjudicate his application to adjust status and now seeks a Court order requiring the Defendants, USCIS and Michael McCleary, to accept jurisdiction of the application and adjudicate it. The Plaintiff also requests a declaratory judgment confirming that his application was improperly denied and further seeks preliminary injunctive relief to prevent the Defendants from taking any adverse action on this case inconsistent with the approval of the Plaintiff's application to adjust status.

## PRAYERS FOR RELIEF

WHEREFORE the Plaintiff respectfully prays that this honorable Court enter an order:

(a)    accepting jurisdiction over this matter;

(b)    temporarily restraining and enjoining the Defendants from taking any action against the Plaintiff inconsistent with reopening his application to adjust status and accepting jurisdiction over the application;

(c)    declaring that the Defendants' denial of the Plaintiff's application to adjust status was arbitrary, capricious, and unlawful and ordering the Defendants to accept jurisdiction over his application and adjudicate the application in accordance with the Immigration and Nationality Act;

(d)    requiring Defendants to reopen the Plaintiff's application to adjust status and to provide the Plaintiff with evidence that his application is pending with the Defendants and ordering the Defendants to adjudicate the application immediately upon entry of a final order in this case against all Defendants;

(e)    award the Plaintiff all costs and reasonable attorney's fees associated with this matter; and

(f)    granting such other relief at law and in equity as justice may require.


**Respectfully submitted,**

**Oscar Osmin Chavez Deras**
**By his attorneys,**

**/s/ Anthony Drago, Esq.**
**Anthony Drago, Esq. (BBO #552437)**
**Anthony Drago, Jr., P.C.**
**35 India Street**
**Boston, MA 02110**
**(617) 357-0400**
**Anthony@adragopc.com**


**/s/ Marcela Ordonez-Freitas, Esq.**
**Marcela Ordonez-Freitas, Esq. (BBO #692615)**
**Law Office of Marcela Ordonez, LLC**
**200 Main Street, Suite 4 Gr.**
**Pawtucket, RI 02860**
**(401) 729-9459**
**mordonez@mordonezlaw.com**